OPINION
On August 8, 1998, appellant, Todd Eismon, was charged with one count of driving under the influence in violation of R.C. 4511.19(A)(1)(3) and one count of reckless operation on private property in violation of Heath City Ordinance 333.09. At the arraignment held on August 10, 1998, appellant moved to dismiss the reckless operation charge. By entry filed same date, the trial court denied said motion. On October 9, 1998, appellant filed a motion to suppress all evidence. A hearing was held on November 3, 1998. By judgment entry filed November 13, 1998, the trial court denied said motion. On December 8, 1998, appellant filed a motion to continue the trial set for December 14, 1998 due to the unavailability of a witness. By judgment entry filed December 11, 1998, the trial court denied said motion. A jury trial on the driving under the influence charge commenced on December 14, 1998. The jury found appellant guilty as charged. The trial court found appellant guilty of the reckless operation charge. By judgment entry filed December 14, 1998, the trial court sentenced appellant to ninety days in jail and imposed a total fine of $525 plus court costs. On December 15, 1998, appellant filed a notice of appeal and a multi-branched motion which included a motion for stay, a motion for acquittal pursuant to Crim.R. 29 and a motion for new trial. By judgment entry filed same date, the trial court granted the motion for stay, but did not rule on the additional motions. This matter is now before this court for consideration. Assignments of error are as follows:
I THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FAILING TO GRANT A CONTINUANCE FOR THE SUPPRESSION HEARING AND/OR TRIAL.
II THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF RECKLESS OPERATION ON PRIVATE PROPERTY.
III THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO SUPPRESS.
IV THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S O CRIM R 29(A) MOTION.
V THE TRIAL COURT FAILED TO PROVIDE A FAIR TRIAL TO APPELLANT.
VI THE TRIAL COURT'S SENTENCE IS UNREASONABLE.
VII THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS THE CHARGE OF RECKLESS OPERATION ON PRIVATE PROPERTY AT ARRAIGNMENT.
VIII THE TRIAL COURT COMMITTED PLAIN ERROR BY ALLOWING APPELLEE TO ACT HEREIN BY A PERSON UNAUTHORIZED TO PRACTICE LAW.
IX THE VERDICT OF THE JURY IS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.
X THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FAILING TO RULE ON MOTIONS FILED 12/15/98.
 I
Appellant claims the trial court erred in denying his motion for a continuance of the suppression hearing because a witness, Clay Williams, had not been served. Appellant also claims the trial court erred in denying his motion for a continuance of the trial date because of the unavailability of Mr. Williams. We disagree. The granting of a continuance rests in the trial court's sound discretion. State v. Unger (1981), 67 Ohio St.2d 65. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. Prior to the suppression hearing, the trial court denied appellant's motion for a continuance, stating as follows:
THE COURT: Oh, okay. Alright, no that'll be, that'll be denied. I understand your position, Mr. Stokes. It's just that, you know, the Court can't continue every case that comes along simply because the Court was unsuccessful in accomplishing service of a subpoena. These subpoenas were not issued in fact until October 28th, which is within the rule but, you know, it just makes it very difficult when anyone could subpoena anybody and, or issue a praecipe for anybody and you know I can't, I can't be continuing cases solely on the basis that they weren't served. I don't know if the subpoena ever will be served.
November 3, 1998 T. at 4.
Appellant informed the trial court that Mr. Williams was a civilian passenger with the arresting officer who may have "information pertinent to one or both parties." Id. However appellant was unable to proffer Mr. Williams' testimony because he had "no idea what he's going to say." Id. at 5. Based upon this admission, we fail to see how appellant can demonstrate any prejudice. As for the motion to continue the trial date due to Mr. Williams' unavailability, appellant again failed to proffer any testimony. Again, we find no prejudice has been shown by the trial court's decision. Assignment of Error I is denied.
 II, VII
Appellant claims the trial court erred in denying his motion to dismiss the reckless operation charge and in finding him guilty of said charge. We disagree.
MOTION TO DISMISS At the arraignment, appellant moved to dismiss the reckless operation charge, arguing as follows: MR. STOKES: * * * One, it fails to (tape inaudible) itself to any city as far as the ordinance is concerned. Secondly, the offense in the first charge alleges that it occurred on a public highway whereas the second offense indicates that the infraction occurred on private property. They both can't be true at the same time. And thirdly there are elements missing from the second offense, being without due regard to the rights, or safety, of persons or property.
August 10, 1998 T. at 2.
The trial court ruled as follows:
THE COURT: Okay. Mr. Stokes, I'll note that the ticket does indicate the City of Heath so I'll find that is sufficient for the codified ordinances. I'll note that it does claim it occurred on a highway, Hopewell Drive, at 441 Hopewell so I'll find it sufficiently states on private property and I'll also find that it doesn't need to contain all the requisites of due, without due regard, etc. to state a, an offense. I'll overrule your motion to dismiss at this point.
Id.
We concur with the trial court's findings. The complaint form sub judice (traffic citation) permits the filing of additional charges and specifically enumerated the code sections claimed to have been violated. The trial court did not err in denying appellant's motion to dismiss the reckless operation charge at arraignment.
MANIFEST WEIGHT Appellant was convicted of driving while under the influence and reckless operation on private property. Appellant argues he cannot be convicted of driving on public and private property at the same time given the facts. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. Patrolman Matt Keeley of the City of Heath Police Department testified to two acts of driving. First, appellant squealed his tires while pulling out of the line of traffic on Hopewell Drive and crossed two westbound lanes and two eastbound lanes to enter a gravel parking lot. T. at 18-19. Then, upon entering the parking lot, appellant skidded, spun his tires, raised dust and caused his vehicle to throw gravel at other vehicles in the parking lot. T. at 19. Appellant proceeded to travel between parking lots on private property which was not a roadway or a driveway to a Wendy's drive-thru. T. at 21-22. Upon review, we find two separate acts of driving, one on public property, Hopewell Drive, and the other one on private property i.e., the parking lots. There was sufficient evidence to convict appellant of reckless operation on private property. We find no manifest miscarriage of justice. Assigments of Error II and VII are denied.
 III
Appellant claims the trial court erred in denying his motion to suppress all the evidence. We disagree. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor (1993),85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." Appellant argues Patrolman Keeley did not have reasonable suspicion of criminal activity to initiate a traffic stop. This argument must be examined under the standard set forth in Terry v. Ohio (1968), 392 U.S. 1, and its progeny. That standard is whether the investigating officer had sufficient articulable facts giving rise to a reasonable suspicion that criminal activity was occurring to justify the stop of the suspect's vehicle. Patrolman Keeley first observed appellant's vehicle missing a rear hubcap. November 3, 1998 T. at 6. Patrolman Keeley and appellant were both headed westbound on Hopewell Drive. Id. Patrolman Keeley's vehicle pulled ahead of appellant's and the following occurred: A. As I came past, and, uh got stopped a couple car lengths ahead of his vehicle, I immediately heard tires squealing and, uh, I thought there was gonna be an accident and I looked in the mirror, just then I saw the same 240SX cut across the, from the right lane across kind of southbound across Hopewell Drive into the gravel parking lot behind TCI's storage building. There was, you could hear the, you could hear the gravel fly and bounce off the car and just like he was in a hurry to get somewhere.
* * *
A. Well, as, uh, as the vehicle entered in the parking lot there's a transition from pavement to gravel and it formed a big dust cloud kind of, not, you could see that once he'd hit the gravel he was obviously at a high rate of speed cause just rolling through there won't, won't cause such a, such a mess.
* * *
A. As I went though the, as I pulled through the lot, you could see where he had entered due to the dust and the, the spin marks in the gravel. I kind of came behind the, just to the east side of the, the storage building there. Uhm, it went through the lot and normally the only exit out of there is, or what's supposed to be an exit out is through the old Chubby's Country Palace parking lot which goes onto Industrial Parkway just to the east. I started that way and I just happened to look and I could see dust to the west side of the building kind of behind Wendy's where there's just barely enough room, it's not a designated driveway or street or anything. There's just barely enough room for a car to go between the buildings and up into the Wendy's parking lot. As I went past you could see the see the dust that way and then I saw the tail lights to the vehicle matching that description sitting at the drive-thru in the, in Wendy's parking lot.
Id. at 7, 8 and 9, respectively.
We find the erratic movement of appellant's vehicle, the squealing tires and the dash across private properties to be sufficient indicia of reasonable suspicion, especially after having been passed by a police car. Given the totality of the circumstances and an analysis of the "whole picture" pursuant to United States v. Cortez (1981), 449 U.S. 411, we find the trial court did not err in denying the motion to suppress. Assignment of Error III is denied.
 IV, IX
Appellant claims the trial court erred in denying his Crim.R. 29 motion for acquittal at the close of the state's case and the jury verdict was against the manifest weight of the evidence. We disagree. Crim.R. 29 states as follows: (A) Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus: Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.
The standard for manifest weight/sufficiency has been set forth supra. The state presented the testimony of two officers, Patrolman Keeley and Patrolman David Kendall. In addition to Patrolman Keeley's observations cited supra, Patrolman Keeley testified to the following: I stop at the light, I just get stopped behind traffic, and then I hear tires squealing and I, my initial thought was that it was an accident, that someone was coming up behind us and someone was gonna get hit. So, just reflex, I looked, I looked back to see if it's gonna be me that's gonna be hit or a vehicle in another lane. Uh, and just then I see that the 240SX that's in the far right hand lane to turn north cut across all the lanes of traffic and then go into a gravel parking lot behind TCI's service building. It's all gravel in there, uh, the, you could hear the tires spinning all the way across the road, there was gravel that was flying. You could hear it hitting either his car or another car, a huge dust cloud. I realized then that it was not going to be an accident, that whoever was in this vehicle was obviously in a hurry to get somewhere which is generally away from a police car.
* * *
As I went through, headed towards Industrial Parkway, I looked at my right behind the TCI Building and you could see that the dust was still, the dust was settling behind the building. And as I look up into Wendy's parking lot, which is right, directly to my right, there is no actual driveway through there. There's just barely enough room that you can fit a car behind that building. The parking lot's actually raised to where there's only one place that you could barely get a vehicle up onto it. It's probably a four or five foot rise, other than this one spot right behind the building, which we never use as access. I've never seen it used as access to that parking lot before. The dust was clearly behind that building and I knew then that he didn't go to the left to go out to Industrial Parkway and then you could see the vehicle's brake lights right in the, uh, that kind of dumps you right into the back of the drive-through at the Wendy's Restaurant on 79. So I then radioed that the vehicle was pulling into the drive-through and then at that point that's when I pulled around to there and the same vehicle that I'd seen with the missing hubcap was sitting, was the very last car at the drive-through at Wendy's.
* * * Q. Did you actually see him enter the parking lot there?
A. Yes, I did.
Q. Alright and was that a controlled entry, would you say?
A. I would say no.
Q. Well, how would you describe it then?
A. It was a very reckless entry. If you go from squealing the tires on pavement and then hit the gravel parking lot and then continue to accelerate.
T. at 14, 15 and 19, respectively.
After stopping appellant, Patrolman Keeley detected a smell of alcohol coming from appellant, and appellant's eyes were "glassed over and somewhat bloodshot." T. at 24, 26. During the field sobriety tests, appellant failed to follow instructions, leaned on the wall and was unable to complete the "one-leg stand test." T. at 27-28. During the "walk and turn test," appellant had to be instructed repeatedly and was unable to complete the test. T. at 29. On the "horizontal gaze nystagmus test," appellant demonstrated all six indicators of alcohol impairment. T. at 30-33. Patrolman Kendall arrived on the scene to transport appellant to the police department. T. at 37-38. Both patrolmen opined appellant was under the influence of alcohol. T. at 34, 97. Following his arrest, appellant became "agitated and argumentative" and "aggressive, combative and rude." T. at 35, 92. At the police department, appellant threatened the officers. T. at 40, 95-96. Upon review, we find this evidence was sufficient to establish the elements of driving under the influence to defeat a Crim.R. 29 motion for acquittal. Appellant testified on his own behalf. Appellant's description of his driving differed from Patrolman Keeley's testimony. Appellant testified he was merely taking a short cut to Wendy's. T. at 116. Appellant blamed his inability to satisfactorily perform the field sobriety tests on a broken leg which had occurred in 1988 and subsequent back problems. T. at 119. Although appellant admitted coming from a bar just prior to the 11:13 p.m. stop, he claimed he did not have any alcohol beverage after 3:00 p.m. that day. T. at 118, 130. Appellant explained his passenger had an open beer in the vehicle. T. at 140. Appellant denied initializing any threats against the officers. T. at 126. Upon review, we find sufficient evidence, if believed, to convict appellant of driving under the influence, and no manifest miscarriage of justice. Assignments of Error IV and IX are denied.
 V
Appellant claims he was denied a fair trial because an audio tape of "the radio traffic" on the day in question was destroyed by the police. We disagree. Officer Keeley testified at trial that audio tapes of radio phone traffic are only kept for thirty days. T. at 52-53. Thereafter, the tapes are erased or taped over. In the case sub judice, the thirtieth day would have been September 9, 1998. A subpoena for the tape was not filed until December 7, 1998. Upon review, we fail to find any purposeful spoilage or destruction of evidence by the police, and no showing of prejudice to appellant. Assignment of Error V is denied.
 VI
Appellant claims the trial court's sentence was unreasonable. We disagree. Appellate courts are not granted the perrogative to change a sentence which fits within the statutory scheme. Appellant was sentenced to ninety days in jail where the maximum sentence could have been six months. Appellant's sentence clearly falls within the statutory scheme of R.C. 4511.99. Assignment of Error VI is denied.
 VIII
Appellant claims the trial court erred in permitting a person unauthorized to practice law to file discovery on behalf of the state. We disagree. Appellant argues the state's "discovery response and its supplemental discovery response were prepared and/or filed by G. Green, a person whom the trial court found to be not authorized to practice law in Ohio." Appellant's Brief at 24. In support, appellant attaches a judgment entry from an unrelated case wherein the trial court found any filings by one Gary Green, a police officer for the Village of Buckeye Lake, should be stricken and treated as a nullity. The trial court went on to instruct the Licking County Municipal Court Clerk "to refuse any pleadings signed by Gary Green from and after this date whether in his own capacity or in a representative capacity for an attorney." See, Exhibit I, attached to Appellant's Brief. We note this unrelated judgment entry was filed on or about November 8, 1998. The discovery filings sub judice were filed before this ruling and no challenge was ever made after the ruling. We find no prejudice to appellant. Assignment of Error VII is denied.
 X
Appellant claims the trial court erred in failing to rule on his motions filed on December 15, 1998. We disagree. Appellant filed his notice of appeal on December 15, 1998. Appellant also filed a multi-branch motion to correct the record to include a Crim.R. 29 motion at the conclusion of all the evidence, a motion for a new trial, a motion for acquittal, a motion to preserve evidence and a motion for stay. The trial court ruled only on the latter motion. Because the motion was filed with the notice of appeal, we find the trial court had no jurisdiction to entertain the Crim.R. 29 motion for acquittal and the motion for new trial. Powell v. Turner (1984),16 Ohio App.3d 404. Any request for a correction of the record at that stage of the proceeding should have been done through an App.R. 9 statement. As for the presevation of evidence motion (a board drawing by Patrolman Keeley), we find no showing of prejudice to appellant. Assignment of Error X is denied.
The judgment of the Municipal Court of Licking County, Ohio is hereby affirmed.
By Farmer, J. Gwin, P.J. and Edwards, J. concur.